UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JASPER L. FRAZIER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:19-cv-00321-JPH-MJD ) |
| DR. RAJOLI, et al. | ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Jasper Frazier is a former inmate of the Indiana Department of Correction ("IDOC"). He alleges in this lawsuit that, from October 2018 through late 2019, the defendants violated his Eighth Amendment rights by providing inadequate medical care for his carpal tunnel syndrome when he was incarcerated at Wabash Valley Correctional Facility. The defendants moved for summary judgment on Mr. Frazier's claims and Mr. Frazier has responded. For the following reasons, the motion for summary judgment is **granted**.

## I. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go

beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## II. Motion to Strike

After the motion for summary judgment was fully briefed, Mr. Frazier submitted several additional filings in support of his response. Dkt. 334, 335, 336, and 337. The defendants have filed a motion to strike these filings, arguing that they were untimely. Dkt. 344. The defendants further argue that these filings are not permitted by Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56-1(d), which provide that a surreply must be limited to new evidence and objections contained within the reply. Mr. Frazier suggests that his filings were permitted because the Court previously told him that the proper procedure for challenging evidence and testimony in support of a motion for summary judgment is in response to the motion for summary judgment itself, rather than in a separate motion. Dkt. 323. And the Court granted Mr. Frazier an extension of time to file an additional response to the motion for summary judgment consistent with Rule 56(d) of the Federal Rules of Civil Procedure. Dkt. 313. Mr. Frazier also cites difficulties he has had obtaining discovery from a non-party.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." While this Rule does not refer specifically to filings other than pleadings, courts regularly entertain such motions. *Cf. Cleveland v. Porca Co.*, 38 F.3d 286, 297 (7th Cir. 1994) (upholding district court's discretion to strike filing not permitted by the Local Rules).

Mr. Frazier's supplemental filings in response to the motion for summary judgment largely repeat his arguments regarding the records and his need for treatment. Even considering those filings, he has not designated a material issue of fact to preclude summary judgment. Accordingly, the motion to strike is **DENIED** to the extent that the Court has considered Mr. Frazier's additional filings.

### III. Facts

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**A. The Parties**

**1. Jasper Frazier**

Mr. Frazier was incarcerated at Wabash Valley from January 2015 through September 2019. Dkt. 275-7 at 3 (Frazier Dep. at 8:22–24). He worked in the kitchen washing pots and pans five days per week, from October 2018 through June 2019. *Id.* at 4 (Frazier Dep. at 12:5–13:7).

### 2. Naveen Rajoli

Naveen Rajoli worked for Wexford of Indiana, LLC as a doctor at Wabash Valley. Dkt. 275-4 ¶ 2 (Rajoli Affidavit).

### 3. Barbara Riggs

Barbara Riggs provides nursing services at Wabash Valley as directed by supervisors and practitioners. Dkt. 275-5 ¶ 2–3 (Riggs Affidavit). This includes oversight of nursing staff, carrying out physicians' orders, scheduling appointments, meeting with patients, and responding to inmate healthcare request slips. *Id.* As a nurse, she does not have the authority to diagnose patients or order specific medical care but must provide care as directed by practitioners. *Id.* ¶ 4.

### 4. Kimberly Hobson

Kimberly Hobson is a registered nurse who was employed as the Health Services Administrator ("HSA") at Wabash Valley during the times relevant to Mr. Frazier's claims. Dkt. 275-6 ¶ 2 (Hobson Affidavit). As the HSA, she does not often provide direct patient care, but instead oversees the provision of medical services at Wabash Valley. *Id.* ¶ 3. This includes reviewing inquiries submitted by staff or inmates regarding medical care, ensuring compliance with IDOC directives, overseeing the nursing staff, responding to medical grievances, and responding to inmate healthcare request forms. *Id.*

## B. Mr. Frazier's Medical Care

### 1. Late 2018

4

Mr. Frazier was seen in nursing sick call on October 27, 2018, after he submitted a healthcare request complaining of swollen and painful hands. Dkt. 275-1 at 10–12 (medical records). The nurse[1] who saw him did not identify any signs of infection, swelling, or decreased sensation in Mr. Frazier's hands. *Id.* Because of his reports of pain, the nurse referred him to see the provider.[2] *Id.*

In late October and early November, Mr. Frazier purchased ibuprofen and muscle rub for his hands, wrists, and arms from the commissary. Dkt. 286 ¶ 9.

Mr. Frazier received a message from his sister on November 1, 2018, regarding his concerns about his hand pain. Dkt. 285-1 at 7. She stated that she had called nursing and expected to receive a return call. *Id.*

Nurse Riggs saw Mr. Frazier in nursing sick call on November 5, 2018, in response to his healthcare request form. Dkt. 275-1 at 13–15. She did not observe any swelling, weakness, or discoloration. *Id.* Mr. Frazier had full range of motion in his hands and stated that he believed the pain was caused by the work he did in the kitchen. *Id.* Mr. Frazier states that Nurse Riggs told him he was not used to working and repetitive movement. Dkt. 286 ¶ 13. Nurse Riggs educated Mr. Frazier on ways he could prepare his hands to adjust to these new movements and repetitive motions. Dkt. 275-1 at 13–15. He had a prescription for Tylenol, and Nurse Riggs advised him to submit a healthcare request slip if his symptoms did not subside. *Id.* After his appointment with Ms. Riggs in

---

[1] This nurse is not a party to this lawsuit.
[2] Mr. Frazier states that, according to IDOC policy, he should have been seen by a provider within seven days. Dkt. 286 ¶ 8 (Frazier Affidavit).

5

November 2018, Mr. Frazier purchased pain relief medication from the commissary. Dkt. 275-7 at 18 (Frazier Dep. at 35:14–21).

In late November 2018, HSA Hobson contacted administrative staff asking that Mr. Frazier be added to the provider's schedule for a chronic care appointment within the next week. Dkt. 275-3 at 5.

In mid-December 2018, Mr. Frazier's sister contacted the IDOC regarding Mr. Frazier's health care. Dkt. 286 ¶ 17. HSA Hobson responded to an inquiry from an IDOC employee referencing the phone call and asking if she could verify whether Mr. Frazier had submitted healthcare request forms. Dkt. 275-3 at 3. HSA Hobson responded that Mr. Frazier had last been seen on November 5, 2018, and had not submitted further healthcare request forms. *Id.* She further stated that she requested that he be seen in chronic care for this issue. *Id.* At an appointment with Dr. Samuel Byrd the next day, December 19, 2018, Dr. Byrd prescribed Prednisone for inflammation, to take twice a day until December 28, 2018. Dkt. 275-1 at 16–20.

### 2. May and June of 2019

The record does not reflect that Mr. Frazier was provided treatment for his hand pain again until May 2019.[3] Mr. Frazier took acetaminophen for his pain between April and June 2019. Dkt. 286 ¶ 19.

At the end of May 2019, Mr. Frazier submitted a healthcare request form asking for a medical lay-in because he could not continue to work in the kitchen

---

[3] Mr. Frazier suggests he was denied treatment for 5 months, but he does not submit evidence that that any of the defendants denied him care between his appointment with Dr. Byrd at the end of December 2018 and May 2019.

6

due to his hand pain. Dkt. 275-1 at 21. Nurse Riggs responded stating that Mr. Frazier was scheduled. *Id.* Mr. Frazier was seen in nursing sick call on May 26, 2019, for his hand pain and the nurse referred him to the doctor. *Id.* at 22–24.

Mr. Frazier submitted a healthcare request form on June 3, 2019, regarding his hand pain stating that he had put in two requests to be seen about his hand. Dkt. 285-1 at 21. Nurse Wright responded that he was scheduled to be seen on June 12. *Id.*

Dr. Rajoli met with Mr. Frazier on June 12, 2019, for a scheduled chronic care appointment. Dkt. 275-1 at 4–8. Dr. Rajoli noted that Mr. Frazier complained of finger pain in his left hand. *Id.* Mr. Frazier had previously been seen in nursing sick call for his hand pain, which Mr. Frazier believed was caused by his work in the kitchen. *Id.* at 1–3. Dr. Rajoli noted that Mr. Frazier stated that he experienced pain with excessive use, but Dr. Rajoli did not identify swelling or discoloration. *Id.* at 4-8. Because Mr. Frazier already had a prescription for Tylenol, Dr. Rajoli did not prescribe any additional pain medication. *Id.* Dr. Rajoli advised Mr. Frazier that if he ran out of Tylenol, he could purchase pain relief medication from the commissary. *Id.*

Mr. Frazier disputes Dr. Rajoli's description of this appointment and contends that Dr. Rajoli altered the medical records. Dkt. 286 ¶ 23. He presents a different copy of what are apparently medical records from that date that do not include notes regarding his hand pain. Dkt. 285-1 at 22–23.[4] Mr. Frazier

---

[4] The defendants object to the admissibility of this document because it is not a complete copy of the relevant medical record. Dkt. 288 at 5–6.

testified at his deposition that Dr. Rajoli "just looked at my hands. He told me to put them out and he did some little taps and asked me—you know, that was it. He got up and said I can't do nothing for you." Dkt. 275-7 at 12 (Frazier Dep. at 43:3–6).

On June 14, 2019, HSA Hobson received an inquiry from IDOC regarding a phone call from Mr. Frazier's sister. Dkt. 275-3 at 1. HSA Hobson responded that Mr. Frazier had been seen by Dr. Rajoli, that he had a prescription for Tylenol, and that he was advised to purchase over-the-counter pain medication if necessary. *Id.* Mr. Frazier disputes that he was told to take over-the-counter medications. Dkt. 286 ¶ 26.

Nurse Riggs responded to another healthcare request form from Mr. Frazier on June 18, 2019. Dkt. 275-1 at 25. Mr. Frazier had directed the request to Dr. Byrd and asked when his appointment would be rescheduled. *Id.* Nurse Riggs responded that his appointment had been scheduled. *Id.*

Mr. Frazier had an appointment with Dr. Byrd on June 18, 2019. Dkt. 285-1 at 31–32. Dr. Byrd gave him a medical lay-in for six weeks, a soft wrist splint, and a prescription for prednisone. *Id.* Nurse Riggs contacted Mr. Frazier's case manager to notify him about Mr. Frazier's medical lay-in. Dkt. 275-1 at 26.

Mr. Frazier submitted a formal grievance in June of 2019 regarding his complaints about the treatment Dr. Rajoli provided him. Dkt. 275-2 at 7–8. In response, HSA Hobson reviewed the medical records and confirmed that he was seen by the doctor and was given a six-week lay in and that "carpal tunnel is entered as a diagnosis." *Id.* at 9. Mr. Frazier appealed this grievance response,

8

and the grievance was determined to be well-founded because "once a referral is made from nursing an appointment will be made within 7 days." Dkt. 285-1 at 27. But the response to his appeal further stated: "medically this has been assessed. Following your chronic care visit you also saw Dr. Byrd." *Id.*

### 3. July, August, and September of 2019

On July 3, 2019, Nurse Riggs responded to a healthcare request from Mr. Frazier asking when he would receive a splint and be prescribed pain medication. Dkt. 275-1 at 26. Nurse Riggs responded that the splint had been received on July 2 and the Prednisone had been ordered on June 18, 2019. *Id.* She also noted that Mr. Frazier had a medical lay-in for six weeks. *Id.*

Nurse Riggs responded to another healthcare request from Mr. Frazier on July 19, 2019. *Id.* at 27. Mr. Frazier requested an extension of the lay-in because he still had pain in both hands. *Id.* Nurse Riggs responded that his medical lay-in was still in effect and would expire on July 31, 2019. *Id.* She also noted that he had received a splint. *Id.* The response further states that Mr. Frazier would be seen for an evaluation. *Id.* But Mr. Frazier states that the evaluation never happened. Dkt. 286 ¶ 34.

In late August and early September 2019, Mr. Frazier submitted several requests for a new brace. Dkt. 275-1 at 33–35. Mr. Frazier was informed that the brace was being repaired in the sewing shop and would be returned to him when the repair was done. *Id.* After receiving his healthcare request form on September 9, 2019, HSA Hobson responded that the brace needed new Velcro, which was replaced, and the brace was then returned to Mr. Frazier. *Id.*

Sometime in late 2019, Mr. Frazier was transferred to New Castle Correctional Facility, where he states he "was given a new and better hand brace." *Id.* ¶ 39.

### IV. Analysis

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

> [C]onduct is "deliberately indifferent" when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff "was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so."

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861, 862 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical

professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* "But a delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015). "Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Id.* at 778.

### A. Dr. Rajoli

Mr. Frazier saw Dr. Rajoli once, on June 12, 2019, for a chronic care appointment.[5] Dkt. 275-1 at 4–8. The medical record presented by Dr. Rajoli shows that Dr. Rajoli assessed Mr. Frazier's hand pain, noted that he was on Tylenol, and advised Mr. Frazier to take over-the-counter medication if he runs out of Tylenol. *Id.* at 7. Mr. Frazier has presented a different version of the medical record from that date, but it also shows that his hands were examined that day. Dkt. 285-1 at 24. And Mr. Frazier testified at his deposition that Dr. Rajoli did examine his hands. Dkt. 275-7 at 12 (Frazier Dep. at 43:1–6). Dr. Rajoli further states that Mr. Frazier had an active prescription for Tylenol at that time, but Mr. Frazier disputes this. *Id.* at 11 (Frazier Dep. at 41:10–14).

---

[5] Mr. Frazier argues that Dr. Rajoli denied him treatment for several months, dkt. 284 at 48, but has designated no evidence that Dr. Rajoli participated in, or was responsible for, Mr. Frazier's care at any time other than this appointment.

11

Viewing the record as a whole, no reasonable juror could find that Dr. Rajoli did not examine Mr. Frazier's hands during his appointment and concluded that he did not require additional pain medication or treatment. While the parties dispute whether Mr. Frazier had an active prescription for Tylenol at the time and whether Dr. Rajoli directed Mr. Frazier to purchase pain medication from the commissary, it is undisputed that Dr. Rajoli believed at that time that over-the-counter pain medication was sufficient to treat Mr. Frazier. *See* dkt. 275-4 ¶ 6. And there is no evidence that Mr. Frazier could not obtain over-the-counter medication on his own. Mr. Frazier points to no evidence that would allow a reasonable jury to conclude that Dr. Rajoli failed to rely on his professional judgment in reaching this conclusion. *See Pyles*, 771 F.3d at 409. This is the case even though Dr. Byrd, who saw Mr. Frazier about a week later, advised a different treatment plan. *See id.* Accordingly, Dr. Rajoli is entitled to summary judgment on Mr. Frazier's claim.

**B. Nurse Riggs**

Nurse Riggs saw Mr. Frazier for his hand pain and responded to health care request forms.

First, Nurse Riggs saw Mr. Frazier in nursing sick call on November 5, 2018. Dkt. 275-1 at 13–15. She did not observe any swelling, weakness, or discoloration. *Id.* Nurse Riggs educated Mr. Frazier on ways he could prepare his hands to adjust to the new movements and repetitive motions required for his work. *Id.* He had a prescription for Tylenol and Nurse Riggs advised him to submit a healthcare request slip if his symptoms did not subside. *Id.* Based on

12

the designated evidence, it is undisputed that Nurse Riggs evaluated Mr. Frazier's hands and considered and responded to his healthcare requests.

Mr. Frazier argues that, after this appointment, Nurse Riggs should have referred him to the doctor. But it is undisputed that Nurse Riggs evaluated his hands, noted that he had a prescription for Tylenol, recommended exercises, and advised Mr. Frazier that he could submit an additional healthcare request if his pain did not subside. Thus, while Nurse Riggs did not refer Mr. Frazier to a doctor at that time, she did provide him treatment and advised that he should request to see a doctor if that treatment did not help. No jury could reasonably conclude that Nurse Riggs did not exercise medical judgment in treating Mr. Frazier. *See Pyles*, 771 F.3d at 409.

Nurse Riggs next interacted with Mr. Frazier at the end of May 2019, when Mr. Frazier submitted a healthcare request form asking for a medical lay-in because of his hand pain. Dkt. 275-1 at 21. Nurse Riggs responded stating that Mr. Frazier was scheduled to see the doctor. *Id.* Mr. Frazier saw Dr. Rajoli on June 12, 2019, and Dr. Byrd on June 18. Dkt. 275-1 at 4–8, 31–32. After Mr. Frazier saw Dr. Byrd, Ms. Riggs received orders from Dr. Byrd that Mr. Frazier should be provided with a medical lay-in for six weeks and she notified Mr. Frazier's caseworker. *Id.* at 9. Mr. Frazier submitted further healthcare requests in July of 2019, asking when he would receive his splint and requesting an extension of his lay-in. Dkt. 275-1 at 26–27. Nurse Riggs responded that his lay-in was in effect until July 31 and that he had received his splint. *Id.*

Mr. Frazier argues that when an inmate has been referred to the doctor, IDOC policy requires the appointment to take place within seven days. But even if IDOC policy was violated, this does not mean that Nurse Riggs was deliberately indifferent to Mr. Frazier's hand pain. *Cf. Schroeder v. Sawall*, 747 F. App'x 429, 431 (7th Cir. 2019) (Plaintiff "also asserts that lying on a conduct report violates prison policy and amounts to deliberate indifference per se. But violation of a prison policy alone does not violate the Constitution or suggest deliberate indifference."). Mr. Frazier was seen twice in the three weeks after he submitted his May 2019 healthcare request. Based on this evidence, no reasonable juror could conclude that Nurse Riggs was aware of a serious risk to Mr. Frazier and disregarded that risk.

Mr. Frazier also argues that Nurse Riggs failed to properly chart his healthcare request such that when he saw Dr. Rajoli, Dr. Rajoli did not know he was there for hand pain. But, even if Nurse Riggs made a mistake in Mr. Frazier's chart, there is no evidence that would support a conclusion that such mistake was more than negligence on Nurse Riggs's part. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[M]edical malpractice, negligence, or even gross negligence does not equate to deliberate indifference.").

It is also undisputed that Nurse Riggs responded to Mr. Frazier's other healthcare requests. When asked about his splint, she responded that it had been provided. Dkt. 275-1 at 26–27. When he asked about his medical lay-in, she responded that he would be scheduled to see the doctor. *Id.* at 27. While Mr. Frazier contends that he did not see the doctor after that request, there is no

14

evidence that Nurse Riggs was personally responsible for any failure in scheduling or that any failure was more than negligence. *See Johnson*, 433 F.3d at 1013.

Nurse Riggs is entitled to summary judgment on Mr. Frazier's claims.

### C. HSA Hobson

HSA Hobson responded to inquiries from IDOC staff and grievances regarding Mr. Frazier's treatment.

In late November 2018, HSA Hobson contacted administrative staff asking that Mr. Frazier be added to the provider's schedule for a chronic care appointment within the next week. Dkt. 275-3 at 5. Then, on December 18, 2019, Nurse Hobson responded to an inquiry from an IDOC employee regarding a phone call from Mr. Frazier's sister asking if she could verify whether Mr. Frazier had submitted healthcare request forms. Dkt. 275-3 at 3. Ms. Hobson responded that Mr. Frazier had last been seen on November 5 and had not submitted further healthcare request forms since. *Id.*

On June 14, 2019, Nurse Hobson received an inquiry from IDOC staff after they received a phone call from Mr. Frazier's sister. Dkt. 275-3 at 1. Nurse Hobson responded that Mr. Frazier had been seen by Dr. Rajoli, that he had a prescription for Tylenol, and that he was advised to purchase over-the-counter pain medication if necessary. *Id.*

HSA Hobson also reviewed several of Mr. Frazier's requests for a new splint, determined that that his splint needed certain repairs, and informed Mr.

Frazier of those repairs. Dkt. 275-1 at 33–35. Upon completion, Mr. Frazier's splint was returned to him. *Id.*

In short, HSA Hobson responded to inquiries regarding Mr. Frazier's hand pain by reviewing the records and reporting her conclusions based on the records. There is no evidence that would allow a reasonable jury to conclude that HSA Hobson was aware that Mr. Frazier was suffering from a serious medical need and disregarded that need.

Mr. Frazier argues that it is Nurse Hobson's job to oversee nursing staff. But, even in her role as a supervisor, HSA Hobson can only be held responsible for actions she personally participated in. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Mr. Frazier also suggests that HSA Hobson should be held liable because she failed to return his sister's telephone call in late October 2018. But there is no evidence that Mr. Frazier's sister spoke to HSA Hobson or that HSA Hobson was aware of the October 2018 telephone call. There is therefore no evidence to support a conclusion that HSA Hobson can be held personally responsible for any action taken on that call. *See id.* Moreover, it is undisputed that Mr. Frazier was seen in nursing sick call just a few days later. Dkt. 275-1 at 13–15. The designated evidence therefore does not support a reasonable inference of deliberate indifference in response to that call.

Finally, Mr. Frazier argues that the defendants were "playing games" with him regarding his splint. Dkt. 293 at 12. But the designated evidence demonstrates that Mr. Frazier's splint needed repairs and that it was repaired

and returned to him. There is no evidence that HSA Hobson or any other defendant were responsible for any alleged delay in doing so.

HSA Hobson is entitled to summary judgment on Mr. Frazier's claims.

### V. Conclusion

The defendants' motion for summary judgment, dkt. [273], is **GRANTED**. The motion to strike, dkt. [344], is **DENIED**. Judgment consistent with this Order and the Order of January 31, 2020, dkt. [77], shall now issue.

**SO ORDERED.**

Date: 9/2/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JASPER L. FRAZIER
000799545B
Northern State Prison
Northern State Prison
168 Frontage Road
Newark, NJ 07114

All Electronically Registered Counsel